UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MASOUD MOHAMMADALIZADEH SHABESTARY**,<br><br>Plaintiff,<br><br>v.<br><br>**ROBERT P. SANDERS, et al.**,<br><br>Defendants. | Case No. 24-cv-362 (CRC) |

## MEMORANDUM OPINION

Plaintiff Masoud Mohammadalizadeh Shabestary is a citizen of Iran and Canada awaiting a decision on his EB-2 employment visa applications. In July 2021, the United States Citizenship and Immigration Services ("USCIS") approved Shabestary's I-140 petition, paving the way for him to apply for an immigrant visa. Two years later, in July 2023, Shabestary and his wife Shahed Mortazian sat for an interview at the U.S. Consulate General in Montreal. At the end of the interview, Shabestary's visa application was refused and placed in administrative processing. He says he has received no meaningful updates on its status since then. Shabestary initiated this action in February 2024, claiming that the government has unreasonably delayed action on his application and seeking to compel the defendants to conclusively decide it. The government has moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim. Because Shabestary has not plausibly alleged an unreasonable delay in adjudicating his visa application, the Court will grant the government's motion and dismiss the complaint.

I. **Background**

The Court draws the following background from the allegations in Shabestary's Petition for Writ of Mandamus and Complaint for Injunctive Relief ("Compl.").

Shabestary, a citizen of Iran and Canada, resides in Ontario, Canada, with his wife. Compl. at 1, ¶ 9. In July 2021, USCIS approved Shabestary's I-140 petition for an EB-2 visa, which is available to individuals "who are members of the professions holding advanced degrees" or "who because of their exceptional ability in the sciences, arts, or business, will substantially benefit prospectively the national economy, cultural or educational interests, or welfare of the United States." 8 USC § 1153(b)(2)(A); Compl. ¶ 14. Mortazavian, as Shabestary's wife, is a derivative beneficiary of his application. Id. ¶ 1. Two years later, in July 2023, a consular officer at the U.S. Consulate General in Montreal interviewed Shabestary and Mortazavian in connection with his visa application. Id. ¶ 15. After the interview, the officer designated Shabestary's application as "refused" and placed the application into "administrative processing." Opp'n, Ex. A, ECF No. 7-1; 8 U.S.C. § 1201(g); Compl. ¶ 16.[1] Shabestary and his wife have repeatedly inquired about the status of his application but have received no meaningful updates, nor any information on processing times. Id. ¶ 17.

Shabestary alleges that he and his wife have suffered "significant personal, financial, and emotional hardships" due to the delay. Id. ¶ 1. He claims the delay has prevented him from starting an on-site position with Meta in California, which has disrupted his career and interfered with Meta's critical projects. Id. ¶ 3. The uncertainty surrounding the couple's relocation plans

---

[1] Although the Complaint does not specify that Shabestary's application was refused, the email notification attached to his opposition confirms that it was. Opp'n, Ex. A. The Court may consider documents "upon which the plaintiff's complaint necessarily relies" even if not produced in the complaint. Hinton v. Corr. Corp. of Am., 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (citation omitted).

has also threatened Mortazavian's job stability and made it difficult for them to manage daily expenses or plan for their long-term financial future. Id. ¶ 3–4. Shabestary and his wife contend that the delay and its effects have caused them severe anxiety and depression, requiring daily medications and regular therapy sessions. Id. ¶ 2.

In February 2024, Shabestary filed this action against the Consul General of the U.S. Consulate in Montreal, Robert Sanders, the Deputy Chief of Mission of the U.S. Embassy in Canada, Marybeth Turner, and the U.S. Secretary of State, Anthony Blinken, in their official capacities. Id. ¶¶ 10–12. He contends that the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 706(1), and the Mandamus Act, 28 U.S.C. § 1361 *et seq*, require the defendants to adjudicate his visa applications without unreasonable delay and seeks a court order compelling them to do so. Id. ¶¶ 14–35. The government has moved to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6).

## II.   Legal Standards

When analyzing a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court "must treat the complaint's factual allegations as true[] and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Giliana v. Blinken, 596 F. Supp. 3d 13, 17 (D.D.C. 2022) (Cooper, J.) (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000)). However, a court need not accept inferences drawn by the plaintiff that are unsupported by facts alleged in the complaint nor accept a plaintiff's legal conclusions as true. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). But on a 12(b)(6) challenge, the defendant bears

the burden, and "dismissal is inappropriate unless the 'plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Browning, 292 F.3d at 242 (citation omitted).

### III. Analysis

The government advances four arguments in support of its motion to dismiss: (1) the Secretary of State is an improper party; (2) the doctrine of consular nonreviewability bars judicial review of the delay; (3) the complaint fails to identify a discrete, non-discretionary duty on the part of the defendants; and (4) the complaint fails to state a plausible claim of unreasonable delay. Because Shabestary fails to plausible allege an unreasonable delay, the Court will grant the government's motion to dismiss.

#### 1. *Improper Defendant*

The government first argues that Secretary Blinken should be dismissed from this case "because he has no role in re-adjudicating the Visa Application at issue" and therefore "cannot provide the relief requested." Mot. at 5. Although the motion to dismiss does not reference Article III standing, the Court interprets this argument as a redressability challenge. "For reasons that have already been well ventilated in prior cases," the Court rejects the government's argument. Giza v. Blinken, No. 23-cv-1641 (CRC), 2024 WL 3967284, at *2 (D.D.C. Aug. 27, 2024); see also Azeez v. Murphy, No. 23-cv-1947 (CRC), 2024 WL 3924565, at *2 (D.D.C. Aug. 23, 2024).

As it often does, the government relies on Baan Rao Thai Restaurant v. Pompeo, 985 F.3d 1020 (D.C. Cir. 2021), where the D.C. Circuit held that the Immigration Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their

determinations.'" 985 F.3d at 1204 (quoting Saavedra Bruno v. Albright, 197 F.3d 1153, 1156 (D.C. Cir. 1999)). But as the Court has explained before,"[c]ontrol over a consular officer's visa *determinations* . . . is not the same as control over the *timing* by which the consular officer considers the applications presented to her." Al-Gharawy v. U.S. Dep't of Homeland Sec., 617 F. Supp. 3d 1, 10 (D.D.C. 2022) (emphasis in original); see, e.g., Azeez, 2024 WL 3924565, at *2. For that reason, "[c]ourts in this jurisdiction [have] routinely reject[ed] the same argument that Defendants have raised here" and held that the Secretary of State is a proper defendant in unlawful-delay cases involving foreign consulates. Fakhimi v. Dep't of State, No. 23-cv-1127 (CKK), 2023 WL 6976073, at *6 (D.D.C. Oct. 23, 2023); see also, e.g., Ramirez v. Blinken, 594 F. Supp. 3d 76, 90 (D.D.C. 2022) (Cooper, J.); Lee v. Blinken, No. 23-cv-1783 (DLF), 2024 WL 639635, at *3 (D.D.C. Feb. 15, 2024); Babaei v. United States Dep't of State, No. 23-cv-1244 (TJK), 2024 WL 1178453, at *4 (D.D.C. Mar. 19, 2024).

Because the Secretary of State "oversees [the State Department]," Compl. ¶ 1, which is responsible for processing visa applications, and "because consular nonreviewability does not stop the Secretary of State from exerting control over the timing of visa adjudications," Giza, 2024 WL 3967284, at *2, a court order directing Secretary Blinken to expedite Shabestary's application would redress his claimed injuries. Accordingly, Shabestary has standing to pursue his claim.

### 2. Consular Nonreviewability

The Government next argues this lawsuit is barred by the doctrine of consular nonreviewability, which "shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." Baan Rao, 985 F.3d at 1024; Mot. at

6–11. Once again, the Court disagrees. See Giza, 2024 WL 3967284, at *3–4; Azeez, 2024 WL 3924565, at *3.

As in the past, the Government points for support to the Supreme Court's recent reaffirmation of Baan Rao in Department of State v. Muñoz, 144 S. Ct. 1812, 1820 (2024). See 1st Notice of Supp. Auth., ECF No. 9, at 1–2. But neither Muñoz nor Baan Rao control the circumstances here. In Muñoz, the Court held that the doctrine of consular nonreviewability applies when the plaintiff challenges "the executive officer's decision to admit or to exclude a[] [noncitizen]." 144 S. Ct. at 1820 (citation and quotation marks omitted). Shabestary, however, does not challenge the government's decision to admit or exclude him or to refuse his petition and place him in administrative processing. Rather, he contends that the agency has unreasonably delayed its completion of administrative processing. The government acknowledges as much in its motion to dismiss. Mot. at 1 ("In short, Plaintiff claims the Government has unreasonably delayed action on his application for an immigrant visa[.]"). And as the Court has observed before, the doctrine of consular nonreviewability does not bar challenges to timing as opposed to substance. See Didban v. Pompeo, 435 F. Supp. 3d 168, 174 (D.D.C. 2020) (Cooper, J.); see also Giliana, 596 F. Supp. 3d at 18–19; Ramirez, 594 F. Supp. 3d at 87.

In addition, numerous courts in this district, including this one, have made clear that the doctrine of consular nonreviewability applies only to "final visa determinations." Giliana, 596 F. Supp. 3d at 18 (quoting Joorabi v. Pompeo, 464 F. Supp. 3d 93, 100 (D.D.C. 2020)). But "applications in administrative processing 'have not been finally refused.'" Giza, 2024 WL 3967284, at *3 (quoting Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry, 168 F. Supp. 3d 268, 292 (D.D.C. 2016)). Shabestary's application

6

is "still under administrative processing" to assess his EB-2 visa eligibility, so "there has been no final visa determination." Giza, 2024 WL 3967284, at *3.

The Court acknowledges that one court in this district recently diverged from the pack, holding that consular nonreviewability applies to cases in administrative processing because, in its view, courts lack authority to order "additional processing" or demand a "reexamination" of a rejected visa application. Yaghoubnezhad v. Stufft, No. 23-cv-03094 (TNM), 2024 WL 2077551, at *11 (D.D.C. May 9, 2024). This Court respectfully disagrees. A plaintiff like Shabestary in administrative processing is "not asking for a reevaluation of any determination;" he is instead requesting that the government end his "administrative limbo" with a timely, final decision. Giza, 2024 WL 3967284, at *3.

In this context, consular nonreviewability has no application and does not bar the Court's review.[2]

### 3. Discrete Action Requirement

The government next contends that Shabestary's complaint fails to state a claim for unreasonable delay under the APA or the Mandamus Act. Mot. at 11–12. "The standards for reviewing agency inaction—including visa delays—are the same under both the APA and Mandamus Act," so the Court will address the claims together. Akrayi v. U.S. Dep't of State,

---

[2] As the Court has explained in prior opinions, Karimova v. Abate, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), does not change this conclusion because it does not displace the principle that "the doctrine of consular nonreviewability applies to challenges based on substance, not timing." Azeez, 2024 WL 3924565 at *3.

7

No. 22-cv-1289 (CRC), 2023 WL 2424600 (D.D.C. Mar. 9, 2023). "To state a claim for unreasonable delay, [a plaintiff] must first allege that the agency 'failed to take a discrete agency action that it is required to take,' and, second, that the delay was unreasonable[.]" Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023) (internal citations omitted).

Contending there is no such discrete agency action here, the government draws the Court's attention to Karimova v. Abate, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), which held that § 555(b) of the APA *alone* was too "general[] and indistinct[]" to establish such a "crystal-clear legal duty" on behalf of the government. Id. at *3–4 (quoting In re Ctr. for Biological Diversity, 53 F.4th 665, 670 (D.C. Cir. 2022)); 2nd Notice of Supp. Auth., ECF No. 11, at 1–4. Shabestary, however, also invokes 22 C.F.R. § 42.81(a), Compl. ¶ 24, as the source of the duty "to either issue . . . a visa or refuse [the] application, without then also placing it in administrative processing," Karimova, 2024 WL 3517852 at *3. The Court need not decide whether the INA or its regulations impose this duty because, either way, Shabestary has not plausibly alleged an unreasonable delay in adjudicating his visa application. See Baygan v. Blinken, No. 23-cv-2840 (JDB), 2024 WL 3723714, at *5 (D.D.C. Aug. 8, 2024) (citing Rostamnia v. Blinken, No. 23-cv-1638 (RDM), 2024 WL 1328462, at *5 (D.D.C. Mar. 28, 2024)). Accordingly, the Court will "assume, without deciding, that the State Department has a non-discretionary, discrete duty to adjudicate [Shabestary's] visa application." Azeez, 2024 WL 3924565, at *3.

4. *Unreasonable Delay*

Finally, the government contends that Shabestary has not shown that the processing of his visa has been unreasonably delayed. To evaluate whether the delay in this case is unreasonable, the Court applies the six-factor test established by Telecommunications Research & Action

8

Center v. Federal Communications Commission ("TRAC"), 750 F.2d 70, 79–80 (D.C. Cir. 1984).  Under the TRAC test, courts must balance the following considerations:

1) the time agencies take to make decisions must be governed by a "rule of reason";
2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

In re United Mine Workers of Am. Int'l Union, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting TRAC, 750 F.2d at 80).

"In analyzing a motion to dismiss, courts apply the TRAC factors not to 'determine[e] whether there has been an unreasonable delay,' but to determine if a plaintiff's complaint 'alleged facts sufficient to state a plausible claim for unreasonable administrative delay.'" Varghese v. Blinken, No. 21-CV-2597 (CRC), 2022 WL 3016741, at *4 (D.D.C. July 29, 2022) (alteration in original) (quoting Jingjing Liu v. Mayorkas, No. 20-CV-654 (CRC), 2021 WL 2115209, at *3 (D.D.C. May 25, 2021)).  While Shabestary contends that resolving this case at the motion to dismiss stage is inappropriate, Opp'n at 20–22 (page numbers designated by CM/ECF), "[t]here is no categorical prohibition on deciding unreasonable-delay claims at the motion-to-dismiss stage." Da Costa, 643 F. Supp. 3d at 12.  "If a 'record contains enough facts to evaluate the TRAC factors' at that point, then a Court may appropriately decide to do just that."  Id. (quoting Sarlak v. Pompeo, No. 20-CV-35 (BAH), 2020 WL 3082018, at *5 (D.D.C. June 10, 2020)).  Applying the TRAC factors here, the Court finds that the complaint fails to plausibly allege an unreasonable delay.  Factors one, two, and four favor the defendants, factor

9

six is neutral, and although factors three and five support Shabestary, the other factors outweigh them.

      a.   <u>TRAC Factors One and Two</u>

The Court begins with factors one and two: "(1) whether the response time is governed by a rule of reason, as informed by (2) any congressional timetable." <u>Giliana</u>, 596 F. Supp. 3d at 20. The first factor is "most important" to the <u>TRAC</u> analysis, <u>In re Core Commc'ns, Inc.</u>, 531 F.3d 849, 855 (D.C. Cir. 2008), though the two are "typically considered together," <u>Milligan v. Pompeo</u>, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).

The parties agree that Congress has established no firm timetable for a consular official to re-adjudicate the visa application at issue. Mot. at 22; Opp'n at 24. When Congress provides no timetable, courts look to relevant case law to provide a rule of reason. <u>See</u> <u>Sarlak</u>, 2020 WL 3082018, at *6 ("Absent a congressionally supplied yardstick, courts typically turn to case law as a guide."). In this district, "courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." <u>Id.</u> (citations omitted) (collecting cases). And in assessing the length of a delay, the Court "calculate[s] the delay 'from the last Government action to the issuance of the opinion.'" <u>Varghese</u>, 2022 WL 3016741, at *5 (quoting <u>Mahmood v. U.S. Dep't of Homeland Sec.</u>, No. 21-CV-1262 (RC), 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021)). Taken together, these factors clearly favor the government.

The 22-month delay in processing Shabestary's application since his February 2023 interview falls comfortably within the range that courts in this district have deemed reasonable. <u>See, e.g.</u>, <u>Dastagir v. Blinken</u>, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) (finding 29 months of "administrative processing" not unreasonable); <u>Sheibani v. Garland</u>, No. 23-cv-2773 (TJK), 2024

10

WL 3043156, at *4 (D.D.C. June 18, 2024) (same for 24 months); Pourabdollah v. Blinken, No. 23-cv-1603 (DLF), 2024 WL 474523, at *7 (D.D.C. Feb. 7, 2024) (20 months); Sharifymoghaddam v. Blinken, No. 23-cv-1472-RCL, 2024 WL 939991, at *5 (D.D.C. Mar. 5, 2024) (15 months).  Using this "case law as a guide," then, these two important TRAC factors weigh in the government's favor.  Sarlak, 2020 WL 3082018, at *6.

      b.  TRAC Factor Four

The fourth TRAC factor also favors the government.  The fourth factor examines "the effect of expediting delayed action on agency activities of a higher or competing priority," TRAC, 750 F.2d at 80, and "carries the greatest weight in many cases," Milligan, 502 F. Supp. 3d at 319.  In fact, "[t]his Circuit has refused to grant relief, even [when] all the other factors considered in TRAC favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain."  Id. at 319 (cleaned up) (quoting Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003)).

Shabestary insists he is not seeking to "reorder a queue of applicants seeking adjudication" because "the Court does not have before it any evidence indicating whether such a reordering would occur here."  Opp'n at 28 (internal quotations omitted) (citing Al-Gharawy, 617 F. Supp. 3d at 19).  But it is readily apparent that "[c]onsular processing capacity is presently a zero-sum game, so granting [Shabestary] relief would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own."  Lee, 2024 WL 639635, at *6 (quotation marks omitted).  "Admittedly, the effect of prioritizing one visa application may prove minimal, but the accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their

11

priorities." Id. (same).  And where, as here, "[t]he agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way," there is "no basis for reordering agency priorities."  In re Barr Lab'ys, Inc., 930 F.2d 72, 76 (D.C. Cir. 1991); see also Arab v. Blinken, 600 F. Supp. 3d 59, 71 (D.D.C. 2022) ("[D]eference must be given to the State Department's priority-setting and resource-allocation decisions." (collecting cases)).

    c.   TRAC Factors Three and Five

  As to TRAC factors three and five—the delay's impact on "human health and welfare" and the "interests prejudiced by delay"— Shabestary comes out on top.  TRAC, 750 F.2d at 80. The complaint alleges that the delay in processing Shabestary's EB-2 visa application has caused him and his wife "significant personal, financial, and emotional hardships."  Compl. ¶ 1. Shabestary alleges that both he and his wife experience severe anxiety and depression, requiring daily medications and regular psychological care.  Id. ¶ 2.  Professionally, Shabestary has lost job opportunities, including the ability to start an on-site position at Meta's California headquarters, while uncertainty over their relocation threatens his wife's job security as well.  Id. ¶¶ 3–4.  The couple also struggles to meet daily expenses and plan for their future, as the delay disrupts their ability to secure stable employment in the United States.  Id. ¶ 4.  These allegations—which, again, the Court must accept as true at this stage—underscore the profound and ongoing impact of the delay on their lives.  And the government's response that expediting Shabestary's application would only direct resources away from others, Mot. at 26, relates to the previously-discussed fourth factor, rather than to factors three and five.

    d.  TRAC Factor Six

The sixth TRAC factor is neutral because Shabestary does not allege any bad faith on the part of the government in his complaint and "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." TRAC, 750 F.2d at 80 (citation omitted) (quotation marks omitted).

\* \* \*

After carefully considering the TRAC factors, the Court finds that the complaint does not plausibly allege an unreasonable delay. While the Court appreciates the challenges Shabestary and Mortazian face due to the delay and recognizes that two factors favor them, "the Court is also mindful that 'many others' face similarly difficult circumstances as they await adjudication of their visa applications." Mohammad v. Blinken, 548 F. Supp. 3d 159, 168–69 (D.D.C. 2021) (quoting Palakuru v. Renaud, 521 F. Supp. 3d 46, 53 (D.D.C. 2021)). As a result, these considerations "are not enough to overcome the other factors that weigh strongly in the Government's favor." Palakuru, 521 F. Supp. at 53.

## IV.  Conclusion

For these reasons, the Court will dismiss the complaint and the case in a separate order that accompanies this Memorandum Opinion.

    **SO ORDERED**.

 

CHRISTOPHER R. COOPER
United States District Judge

Date: December 16, 2024